## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SCOTT WASSAM, | ) | 5:13CV2149 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | MAG. JUDGE KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMIN., | ) | |
| | ) | |
| | ) | |
| Defendant | ) | MEMORANDUM |
| | ) | AND ORDER |

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Michael Scott Wassam's application for Social Security Disability and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

## I.  PROCEDURAL HISTORY

On June 15, 2005, Plaintiff Michael Scott Wassam ("Wassam") applied for Disability Insurance and Supplemental Security Income benefits.  (Doc. 12, tr., at 151-153.)  Wassam stated that he became unable to work because of his disabling condition on April 2, 2002.  (Tr., at 151, 164.)  Wassam listed his physical or mental conditions that limit his ability to work as diabetes, obesity, reflux, fibromyalgia,

nerve damage, high blood pressure, enlarged liver, sleep apnea, and panic attacks. (Tr., at 164.)

Wassam's application was denied initially and upon reconsideration. (Tr., at 129-131, 123-124, 869-876.) On May 1, 2006, Wassam filed a written request for a hearing before an administrative law judge. (Tr., at 120, 106.)

An Administrative Law Judge ("the ALJ") convened a hearing on August 4, 2008, to hear Wassam's case. (Tr., at 914-950.) Wassam was represented by counsel at the hearing. (Tr., at 916.) Thomas Nimberger[1], a vocational expert, attended the hearing and provided testimony. (Tr., at 915-916, 940-948.)

On September 17, 2008, the ALJ issued his decision applying the standard five-step sequential analysis[2] to determine whether Wassam was disabled. (Tr., at

---

[1] Nimberger's name is misspelled "Nimburger" in the hearing transcript. See, doc. 12, tr., at 105, 917.

[2] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden

40-54.)  Based on his review, the ALJ concluded Wassam was not disabled.  (Tr., at 43, 53-54.)

Following the issuance of this ruling, Wassam sought review of the ALJ's decision from the Appeals Council, which remanded the case.  (Tr., at 95-99, 90-92, 35-39.)  The Appeals Council found that Wassam's migraine headaches were a medically determinable impairment, and remanded for further consideration to determine the severity, and any resulting limitations.  (Tr., at 39, 37.)  Also, further consideration of Wassam's obesity, and its effects on his abilities, was mandated.  (Tr., at 37.)  The Appeals Council also directed reconsideration of the RFC for light work, in light of the finding that Wassam cannot stand or walk for more than two hours in an eight-hour work day.  (Tr., at 37.)

A second hearing was held, before a different ALJ, on November 30, 2011.  (Tr., at 881-913.)  Wassam was represented by counsel at the hearing.  (Tr., at 883.)  Gene Burkhammer, a vocational expert, attended the hearing and provided testimony.  (Tr., at 883, 908-912.)

On January 5, 2012, the second ALJ issued his decision applying the standard five-step analysis to determine whether Wassam was disabled.  (Tr., at 10-25.)  Based on his review, the ALJ again concluded Wassam was not disabled prior to January 28, 2007, but became disabled on that date and has continued to be

---

shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

3

disabled through the date of the decision.  Further, the ALJ found that Wassam was not under a disability within the meaning of the Social Security Act at any time through September 30, 2006, the date last insured.  (Tr., at 14, 24-25.)  The Appeals Council denied Wassam's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 3-5.)  Wassam now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Wassam briefs a single issue:

1.  The ALJ erred in determining that the claimant's onset date was January 28, 2007, which was after his date last insured of September 30, 2006.

(Doc. 15, at 15.)


## II.  PERSONAL BACKGROUND INFORMATION

Wassam was born on October 12, 1971, and was 33 years old as of his application date.  (Doc. 12, tr., at 151, 173.)  Accordingly, Wassam was at all times considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  Wassam graduated from high school, and is able to communicate in English.  (Tr., at 171, 163.)  He has past relevant work as a tow motor driving, and in shipping and receiving.  (Tr., at 22, 908.)

### III.  MEDICAL EVIDENCE

Disputed issues will be discussed as they arise in Wassam's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Wassam applied for Disability and Supplemental Security Income benefits on June 15, 2005.  (Doc. 12, tr., at 151-153.)  Wassam had listed the conditions that limit his ability to work as diabetes, obesity, reflux, fibromyalgia, nerve damage, high blood pressure, enlarged liver, sleep apnea, and panic attacks.  (Tr., at 164.)

Wassam provides a summary of his medical history prior to January 2007, which indicates elevated blood sugars, high blood pressure, difficulty breathing, and chest pain, in March 2005.  (Doc. 15, at 3-4.)  Wassam was diagnosed with obstructive sleep apnea (OSA), with hypersomnia and diabetic polyneuropathy in April 2005.  (Doc. 15, at 4, citing tr., at 482.)

In April 2005, a specialist in gastroenterology and hepatology diagnosed Wassam with elevated liver enzymes, liver disease, chronic gastroesophageal reflux disease, and dysphagia.  (Doc. 15, at 5, citing tr., at 386.)  That same month, Wassam was diagnosed with diabetic polyneuropathy, and severe obstructive sleep apnea, with hypersomnia.  (Doc. 15, at 5, citing tr., at 475, 544.)

At a May 5, 2005, emergency room visit, Wassam exhibited hypertension and blood pressure control problems.  An ECG showed sinus tachycardia.  (Doc. 15, at 5, citing tr., at 346, 349.)

Wassam got a CPAP machine in May 2005 to help control his OSA with hypersomnia.  (Doc. 15, at 6.)  That summer and fall, he complained of difficulty with sleep, and being unable to tolerate the CPAP machine.  Id.

In June 2005, Wassam's problems with obstructive sleep apnea, diabetes mellitus, hypertension, diabetic neuropathy, and gastroesophageal reflux were directly related to his obesity.  Bariatric surgery was suggested as medically necessary for weight loss.  (Doc. 15, at 6, citing tr., at 554.)

In September 2005, Wassam had a psychological evaluation with psychologist Robert F. Dallara, Jr., Ph.D., was diagnosed with mood disorder, anxiety disorder, and assigned a GAF score of 55.  (Doc. 15, at 6-7, citing tr., at 390-392.)  In discussing Wassam's work-related mental abilities, Dr. Dallara found Wassam to be "mildly impaired" in his ability to relate to others, and in his ability to withstand day-to-day pressures and stress of work.  Wassam's abilities to understand, remember and follow instructions was assessed as "adequate," and his ability to maintain attention and concentration appeared adequate as well.  (Tr., at 392.)

In February 2006, Wassam reported to his doctor that he had visited the ER complaining of a severe headache that lasted for five or six days.  He was diagnosed with intractable migraine syndrome, prostatitis, and exacerbation of the headache.  (Doc. 15, at 8, citing tr., at 454.)  Doctor's notes from March 2006 state that Wassam reported having headaches six to eight times per month for years, and that these headaches would typically last two to three days.  (Doc. 15, at 8, citing tr., at 536.)

6

At a mental status evaluation in December 2006, Wassam had a depressed and anxious mood, blunted affect, paranoid delusions and auditory and visual hallucinations, and possibly "ideas of reference, thought broadcasting, and thought insertion or thought withdrawal."  He was diagnosed with Major Depressive Disorder with Psychotic Features, R/O Dysthymia, Generalized Anxiety Disorder, R/O Panic Disorder, R/O Schizoaffective Disorder, and R/O Schizophrenia, Paranoid Type.  (Doc. 15, at 10-11, citing tr., at 585-586.)

That same month, December 2006, Wassam attended two individual psychotherapy sessions.  (Doc. 15, at 11.)  Wassam was distracted, and his eyes darted around the room.  He reported he had stayed in a room for two days fighting someone, and that the person was holding him down.  (Doc. 15, at 11, citing tr., at 583.)

On January 28, 2007, Wassam was admitted into hospital at the direction of Dr. Anil Parikh, a psychiatrist, due to irritability, agitation, auditory hallucinations, and a psychotic relapse with paranoia.  Wassam had become agitated at home, overturned the kitchen table and chairs, grabbed steak knives, and isolated himself in the bathroom.  (Tr., at 700.)  He was released from the hospital on January 30, and directed to follow up with Dr. Parikh on January 31. (Tr., at 700-702.)

Wassam provides two specific instances of vocational recommendations. One of Wassam's treating physicians, Robert Gsellman. M.D., completed a state agency questionnaire on March 31, 2006.  (Doc. 15, at 9, citing tr., at 426-427.)  Dr.

Gsellman was informed that Wassam was seeking disability benefits due to the following:  "diabetes, obesity, reflux, fibromyalgia, nerve damage, HBP, enlarged liver, sleep apnea and panic attacks, depression."  (Doc. 12, tr., at 425.)  Dr. Gsellman noted that he had first seen Wassam on March 11, 2005, and most recently on February 10, 2006.  His diagnosis was:  diabetes mellitus (poor control), HTN, ^LFTS- fatty liver, polycythemia, ^lipids, fibromyalgia, GERD, OSA, and migraine syndrome.  (Doc. 12, tr., at 426.)  However, in the section where the doctor was asked to describe any limitations which Wassam's impairments impose "on the ability to perform sustained work activity," Dr. Gsellman simply responded, "Patient has high blood pressure which requires frequent ER visits."  (Doc. 12, tr., at 427.)

Wassam also directs the court's attention to a "case analysis" completed by "Nick Albert" on April 5, 2006.  (Doc. 15, at 9, citing tr., at 428.)  There is no indication who, or what, "Nick Albert" is, or what institution he is affiliated with.  (Doc. 12, tr., at 428, "page 1 of 1".)  Nick Albert states, in part, "RFC given=Light Level of exertion."  (Doc. 15, at 9, citing tr., at 428.)

Other than further treatment history, Wassam does not point to any other medical evaluations of vocational limitations in specific support of his disability claim.

## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert Burkhammer provided testimony.  (Doc. 12, tr., at 908-912.)  Burkhammer testified that Wassam had past relevant work as a tow motor driver, and in receiving.  (Tr., at 908.)

The ALJ posed a hypothetical question concerning an individual with Wassam's same age, education, and work experience.  The hypothetical person could lift up to ten pounds occasionally and carry ten pounds.  He would need to be able to sit or stand alternatively during a work day.  He could occasionally operate foot controls bilaterally.   He could frequently reach overhead, and reach bilaterally.  He could frequently finger bilaterally.  He could occasionally climb ramps and stairs, but he could never climbs ladders, ramps or scaffolds.  He could frequently balance, stoop, crouch or crawl, and occasionally kneel.  He can never be exposed to unprotected heights or moving mechanical parts.  He could frequently operate a motor vehicle.  He could frequently be exposed to humidity and wetness, and occasionally be exposed to extreme cold or heat.  He could frequently be exposed to vibration.  He would not be able to perform at a production rate pace, but could perform goal oriented work.  He could frequently interact with supervisors, coworkers and the public.  In response to the ALJ's question, the VE testified that this individual could not perform claimant's past relevant work.  (Tr., at 909.)

Burkhammer was then asked whether, within those hypothetical vocational limitations, there would be other jobs in the national and regional economy that such an individual could perform.  (Tr., at 909-910.)  Burkhammer answered that

there were, at the sedentary level, and gave three examples, all sedentary, SVP 2: (1) charge account clerk, DOT number 205.367-014, approximately 250 jobs locally, 3,000 in Ohio, and 80,000 nationally; (2) addresser, DOT number 209.587-010, approximately 300 jobs locally, 3,000 in Ohio, and 90,000 nationally; and, (3) food beverage order clerk, DOT number 209.567-014, approximately 300 jobs locally, 4,000 in Ohio, and 90,000 nationally.  (Tr., at 910.)

The ALJ then modified the hypothetical, "to what extent . . . could an individual be off tasks in those jobs that you've identified?"  The VE responded that, if someone's off task more than 15 percent on an ongoing basis, that would preclude all employment.  (Tr., at 910.)

The third hypothetical posed by the ALJ involved the same limitations as the first, but "if an individual could never interact with the public or interact with coworkers, would that individual be able to perform the jobs you identified in hypothetical one?"  Burkhammer responded, "no."  (Tr., at 910.)  Further, the VE was unable to identify any jobs at the sedentary level that such a person could perform.  (Tr., at 910-911.)

The ALJ posed a fourth hypothetical, whether there would be jobs if such an individual was limited to the light level.  The VE testified that there would be some jobs, if some instruction could be taken from supervisors, but if the sit/stand option was included, that would take those out.  (Tr., at 911.)

## V.  ALJ's DECISION

The second ALJ made the following findings of fact and conclusions of law in

his January 5, 2012, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  Since the alleged onset date of disability, April 2, 2002, the claimant has had the following severe impairments:  diabetes mellitus; hepatic cirrhosis; obesity, migraine headaches; neuropathy; sleep apnea; major depressive disorder; anxiety disorder; bipolar disorder; fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

4.  Since the alleged onset date of disability, April 2, 2002, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, I find that prior to January 28, 2007, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he must have been allowed to sit and stand at will.  He could occasionally operate foot controls.  He could frequently reach overhead and reach bilaterally.  He could frequently finger objects.  He could occasionally climb ramps and stairs[,] and kneel.  He could never climb ladders, ropes or scaffolds.  He could frequently balance, stoop, crouch, or crawl. He could never be exposed to unprotected heights and moving mechanical parts.  He could frequently operate a motor vehicle[,] and frequently be exposed to humidity, wetness and vibration.  He could occasionally be exposed to extreme cold and extreme heat.  He was not able to perform at a production rate pace, but could perform goal-oriented work.  He could frequently interact with supervisors, co-workers or the public.

6.  After careful consideration of the entire record, I find that beginning on January 28, 2007, the claimant has the residual

functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he must be allowed to sit and stand at will.  He can occasionally operate foot controls.  He can frequently reach overhead and reach bilaterally.  He can frequently finger objects.  He can occasionally climb ramps and stairs[,] and kneel.  He can never climb ladders, ropes or scaffolds.  He can frequently balance, stoop, crouch, or crawl.  He can never be exposed to unprotected heights and moving mechanical parts.  He can frequently operate a motor vehicle[,] and frequently be exposed to humidity, wetness and vibration.  He can occasionally be exposed to extreme cold and extreme heat.  He is not able to perform at a production rate pace, but can perform goal-oriented work.  He can frequently interact with supervisors.  He can never interact with co-workers or the public.  He will be off-task 15% of the workday.

7.  Since April 2, 2002, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8.  Prior to the established disability onset date, the claimant was younger individual age 18-44.  The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10.  Prior to January 28, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Beginning on January 28, 2007, the claimant has not been able to transfer job skills to other occupations  (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.  Prior to January 28, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

12.  Beginning on January 28, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that

the claimant can perform (20 CFR 1560(c), 404.1566, 416.960(c), and 416.966).

13.  The claimant was not disabled prior to January 28, 2007, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14.  The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2006, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Doc. 12, tr., at 16-18, 21-25.)


## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.


## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402

U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).


## VIII.  ANALYSIS

Wassam briefs a single issue:

1.  The ALJ erred in determining that the claimant's onset date was January 28, 2007, which was after his date last insured of September 30, 2006.

(Doc. 15, at 15.)

14

Wassam argues that the ALJ did not properly evaluate the claimant's credibility.  (Doc. 15, at 15, quoting SSR 96-7p.)  Wassam points out that the ALJ found that, although Wassam had reported mental health issues prior to the date last insured, he only had plans to see a psychiatrist, suggesting that he had not sought treatment, which detracted from the level of severity alleged.  (Doc. 15, at 16, citing tr., at 19.)

Wassam notes that a psychiatric consultative exam from September 2005 diagnosed him with mood disorder and anxiety disorder.  (Doc. 15, at 16, citing tr., at 392.)  In March 2006, he was diagnosed with generalized anxiety disorder.  Id., citing tr., at 536.  In November 2006, it was noted that Wassam had many deep lying psychological issues and generalized anxiety disorder, and less than a month later he was reported low motivation, feeling nervous and anxious, feeling that people were out to get him, and that people can read his mind, or put thoughts into his mind.  (Doc. 15, at 16-17, citing tr., at 570, 584-586.)  Wassam contends that the "evidence considered as a whole tends to indicate that Wassam's failure to seek treatment earlier for his psychological issues may be attributable to his mental impairments which existed at that time."  (Doc. 15, at 17.)

Wassam also contends that the ALJ, in determining that there was not sufficient medical evidence to establish disability prior to January 2007, ignored or gave little weight to evidence which was contrary to his opinion.  (Doc. 15, at 17.)  Wassam points out that, prior to the date last insured of September 30, 2006, he was diagnosed with multiple maladies.  (Doc. 15, at 17-18.)  Wassam argues that

15

the ALJ violated the governing standards when assessing the medical evidence concerning his alleged disability, picking and choosing which evidence supported a finding of non-disability, and ignoring evidence that supported his disability.  (Doc. 15, at 18, citing Gentry v. Commissioner, 741 F.3d 708 (6th Cir. 2014).)

In Gentry, the claimant had argued that the ALJ had ignored objective medical evidence of the severity of her conditions.  Gentry, 741 F.3d at 712.  The Sixth Circuit found that the ALJ did not properly determine whether the claimant's conditions matched any of the listing in Appendix 1 under step three.  Id. at 724.  The ALJ had ignored record evidence that supported a finding that her conditions did match.  The ALJ also ignored significant evidence that supported the claimant's longstanding complaints of pain, and allegations of restrictions on sitting, standing, and using her hands.  Id. at 725.  Wassam does not provide a similar specific analysis of a listing which would apply, or evidence to support specific physical limitations.

The Sixth Circuit in Gentry found that the ALJ's decision was not supported by substantial evidence where the ALJ ignored medical evidence from the claimant's treating physicians, which resulted in a "disregard of a substantial body of medical evidence supporting a finding that [the claimant] is disabled."  Gentry, 741 F.3d at 729.  Here, although Wassam points to evidence in the record of his various physical and mental maladies, he does not point to evidence to support a finding that he cannot perform any substantial gainful employment by reason of those impairments.

16

In addition, Wassam argues that the ALJ based his findings on a function report completed by the claimant in August 2005 concerning his daily activities. Wassam points to cases in which the court found that "the performance of minor daily activities is insufficient to establish the ability to engage in substantial gainful activity." (Doc. 15, at 19, citing Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985), and other cases).

However, the regulations provide that an ALJ may consider household and social activities in evaluating symptoms. Abdelhadi v. Commissioner, No. 5:09CV2551, 2011 WL 867597, at *9-*10 (N.D. Ohio March 10, 2011) (citing Blacha v. Secretary, HHS, 927 F.2d 228, 231 (6th Cir. 1990)). In Abdelhadi, the ALJ found that the claimant's household and social activities were relevant to evaluating the intensity and severity of her symptoms, and that the ALJ did not err in considering the household and social activities. Abdelhadi, 2011 WL 867597, at *10. Similarly here, the ALJ found that Wassam's household and social activities were relevant to evaluating the intensity and limiting effects of his symptoms, and it was not error for the ALJ to consider these activities. See generally tr., at 19-20.

In summary, Wassam states:

> The ALJ violated the agency's own regulations when he "cherry picked" the evidence, discounted significant findings suggestive of disability, and focused on the little that claimant could do to find that he was not disabled prior to his date last insured, which was only four months prior to the finding of disability that was made.

(Doc. 15, at 20.) Wassam states that nothing changed between September 2006 and January 2007, and the choice of the January date was arbitrary. Wassam contends

17

that the ALJ erred in determining that the onset date was January 28, 2007,

"instead of a date prior to his date last insured of September 30, 2006." (Doc. 15, at

20.)

The Commissioner responds that the court must affirm the ALJ's decision if

his findings and inferences are reasonably drawn from the record and supported by

substantial evidence, even if there is some evidence to support the plaintiff's claims.

(Doc. 16, at 11, citing 42 U.S.C. § 405(g); and Key v. Callahan, 109 F.3d 270, 273

(6th Cir. 1997).) The Commissioner points out that it is Wassam's burden to prove

his entitlement to Social Security disability benefits. (Doc. 16, at 11-12, citing 20

C.F.R. §§ 404.1512(c), 416.912(c).) The Commissioner asserts that Wassam has not

proven that he was disabled prior to his date last insured. (Doc. 16, at 12.)

The Commissioner contends that the ALJ took into account all of the

functional limitations resulting from Wassam's medical and psychological

conditions, and properly determined that Wassam retained the ability to perform a

limited range of sedentary work prior to January 28, 2007. (Doc. 16, at 12-13.)

The ALJ found that Wassam's statements concerning the intensity,

persistence and limiting effects of his symptoms were not credible prior to January

28, 2007, to the extent they were inconsistent with the RFC assessment. After

considering the available medical evidence, the ALJ found the record as a whole

was insufficient to establish disability prior to January 2007. (Doc. 12, tr., at 19.)

The Commissioner points out that a November 2005 physical RFC assessment

failed to find disability. (Doc. 16, at 14, citing tr., at 417-424.)

18

Specifically as to Wassam's claimed mental impairments, the ALJ found that the record did not indicate any specialized mental health treatment until his evaluation in December 2006.  Regarding his alleged diabetes and neuropathy as well, "the clinical findings do not support a finding of disability."  (Doc. 12, tr., at 19.)

Although Wassam argues that the ALJ is slighting, or ignoring, medical evidence that could lead to a finding of disability, Wassam does not identify any medical or psychological opinion which would support a finding that Wassam could not perform any substantial gainful employment (pre-2007) by reason of any medically determinable, lasting physical or mental impairment.  See generally 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c) (medical and other evidence must be furnished about  effects of impairment(s) on ability to work); see also tr., at 423 (noting that no treating or examining source statement regarding claimant's physical capacities was on file).

In addition, the ALJ's findings based on the credibility of the claimant are accorded great weight and deference.  Walters v. Commissioner, 127 F.3d 525, 531 (6th Cir. 1997); Gonzalez v. Commissioner, No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  Nevertheless, the ALJ's assessment of the claimant's credibility must be supported by substantial evidence.  Id.

The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire

19

case record," and "must find support in the record."  Rogers v. Commissioner, 486 F.3d 234, 247-248 (6th Cir. 2007).  SSR 96–7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Rogers, 486 F.3d at 248.  The court finds that the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence.

The ALJ identified specific facts supported by the record which cast doubt on the severity of the disabilities as described by Wassam.  (Tr., at 17, 19-20.)  Because "a reasonable mind might accept [the evidence] as adequate to support" his credibility determination, the court concludes that substantial evidence supports the ALJ's finding.  Norris v. Commissioner, No. 11-5424, 2012 WL 372986, at *5 (6th Cir. Feb. 7, 2012) (citing Rogers, 486 F.3d at 241).

Wassam argues that choosing the January 28, 2007, date was arbitrary, and not in the spirit of the Social Security Act, which is remedial legislation, meant to be liberally applied.  (Doc. 15, at 20, citing O'Daniel v. Richardson, 458 F.2d 330, 334 (6th Cir. 1972).)  Wassam argues that an earlier date, within the insured period, should have been selected, but he does not propose a specific date, nor does he provide any medical or psychological opinion which would support a finding that Wassam could not perform substantial gainful employment by reason of a medically determinable physical or mental impairment as of an earlier date.

Wassam states that nothing really changed between September 2006 and January 2007, thus, the choice of the January date was arbitrary. (Doc. 15, at 20.) Given that Wassam had a psychotic episode resulting in hospitalization on January 28, 2007, the court does not find that particular date to be "arbitrary."

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The Commissioner's decision denying benefits is AFFIRMED.


IT IS SO ORDERED.

Dated:   Feb. 26, 2015                    /s/ Kenneth S. McHargh
                                           Kenneth S. McHargh
                                           United States Magistrate Judge